# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MANUEL METLOCK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 09-cv-908-MJR** |
| | ) | |
| **ANTHONY RAMOS,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, an inmate currently confined at the Stateville  Correctional Center (Stateville),

brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case

is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A,

which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event,
> as soon as practicable after docketing, a complaint in a civil action in which a
> prisoner seeks redress from a governmental entity or officer or employee of a
> governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims
> or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief
> > may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such
> > relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke*

*v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be

granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atlantic Corp. v. Twombly*, 590 U.S. 544, 570 (2007). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

While confined in the Menard Correctional Center (Menard), Plaintiff was notified that Eva Moore had been placed on "permanent visiting restriction" by Defendant Ramos. Moore was a former employee of Menard who - prior to her resignation from Menard - had begun corresponding with Plaintiff. *See* Exhibit A-9 to Plaintiff's Complaint (Moore's letter to Warden Gaetz dated January 5, 2009). Moore continued to correspond with Plaintiff after she had resigned from her position. *Id*. It appears that Illinois Department of Corrections has a policy which states:

> Employees who have been involved with offenders or former employees who have either resigned or have been terminated as a result of involvement with offenders may be permanently restricted from visits if it is determined they may be a threat to safety or security.

Exhibit A-1 to Plaintiff's Complaint (§ 525.60(h) of the Administrative Code). Although called a "permanent visiting restriction," it appears that the restriction is subject to periodic review. *See* Exhibit A-2 to Plaintiff's Complaint (letter from A. Ramos to Eva Moore date July 11, 2007).

In July 2007, Plaintiff was placed on "punitive segregation" pending investigation into

alleged misconduct between him and Moore after a letter and picture were discovered by Menard's mail room.  Plaintiff was released from "punitive segregation" after 26 days and, it appears, no disciplinary charges were brought against him.

In July 2007, Moore was also informed by Brad DeDecker, a correctional officer at Menard, that he had a meeting with Defendants Hulick and Ramos.  At this meeting, DeDecker - who allegedly had previously fathered a child with Moore - was told that Plaintiff would "never see" Moore or her son (i.e.,  DeDecker's son).

Plaintiff states that shortly thereafter, he was "repeatedly harassed and threatened by correctional officer Johnson, . . . Huff, and unknown unnamed officers."  The harassment consisted of shaking down Plaintiff's cell, tossing his personal property around, and making "disrespectful comments about . . . Moore" and Plaintiff.

In March 2008, Plaintiff was transferred to Stateville where, as noted above, he is now confined.  It appears that Plaintiff and Moore are now engaged to be married.  Plaintiff further claims that "Moore is the only person able to bring [his] kids" for visits to the prison and, therefore, he is unable to visit with his children.  Plaintiff claims that Defendants Ramos, Hulick, Gaetz, and McCann violated his right to Due Process by "arbitrarily" restricting his visits with Moore and that Defendants Millers and Randale violated his right to Due Process by affirming the "arbitrary" restriction and failing to correct the matter after it was brought to their attention.

## DISCUSSION

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To establish a due process violation, a prisoner must first demonstrate that the state deprived him of a liberty or property

interest created by state law or the Due Process Clause itself. See *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995).   An inmate's state-created liberty interests are protected under the Due Process Clause only insofar as a deprivation of the interest at issue would impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

With regard to his confinement in punitive segregation for 26 days while he was housed at Menard, an inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life."  Id.  The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*.  In this Circuit, a prisoner in punitive segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state.  *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).  If the inmate is housed at the most restrictive prison in the state, he or she must show that punitive segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.*  Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In the case currently before the Court, Plaintiff was sent to punitive segregation for 26 days. Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in punitive segregation were substantially more restrictive than administrative segregation in the most

4

secure prison in the State of Illinois.   Therefore, Plaintiff's allegations concerning punitive segregation do not state a Due Process claim.

With regard to the "permanent visiting restrictions" on Moore,  the Due Process Clause does not independently protect an inmate's access to a particular visitor. See *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 484 (1989)(holding that the denial of prison access to a particular visitor "is well within the terms of confinement ordinarily contemplated by a prison sentence[.]"). Following the template provided by the Seventh Circuit in *Wagner*,  a prisoner confined at a state prison has a state created liberty interest in visitation with a particular person only if the visitation restrictions applicable to him are substantially more restrictive than the visitation restrictions placed on inmates held in administrative segregation at the most secure prison in that state.  *Wagner v. Hanks*, 128 F.3d at 1175.  If the inmate is housed at the most restrictive prison in the state, he or she must show that the visitation restriction there is substantially more restrictive than the restrictions placed on prisoners held in administrative segregation at that prison. *Id.*

In the case at hand, Plaintiff has alleged facts indicating that the State would prohibit former employees of a correctional facility  from visiting inmates in whatever state correctional facility a prisoner  was confined.  As such, Plaintiff has failed to allege facts indicating that the restrictions placed on Moore's visits - whether at Menard or Stateville - are "atypical and unusual."[1]

Although it is true that "[p]arents have a liberty interest, protected by the Constitution, in having a reasonable opportunity to develop close relations with their children."  *Hodgson v.*

---

[1]The Court notes that in paragraph 14 of the complaint, Plaintiff alleges that the "arbitrary application o f visiting restriction involves an atypical and significant hardship in relation to ordinary prison life."  Such an allegation, however, is nothing more than an  abstract recitation of an elements of a Due Process claim or a conclusory legal statement" which the Court need not accept  *Brooks v. Ross*, 578 F.3d at 581.

*Minnesota*, 497 U.S. 417, 483,  (1990) (Scalia, J., concurring in part and dissenting in part), quoted in *Wirsching v. Colorado*, 360 F.3d 1191, 1198 (10th Cir. 2004), this liberty interest does not appear to be implicated in this case.  First, Plaintiff is neither Moore's child nor her parent.   Second, the complaint fails to allege any facts indicating that Plaintiff's children are barred from visiting him. It may well be that there are practical barriers to Plaintiff's children visiting him and that Moore is the only person willing to take on the challenges of overcoming those barriers.  But, those are barriers are not made inherently more difficult to overcome by the restrictions placed on Moore. There's no indication that Moore is unable to bring Plaintiff's children for visits, though, her willingness to do so may be diminished because she cannot also visit Plaintiff.  Because Plaintiff has failed to allege facts indicating that the restrictions on Moore's visits has deprived him of a protected liberty interest, the instant complaint should be dismissed pursuant to 28 U.S.C. § 1983.

        As noted above, Plaintiff's complaint also alleges that after the initial meeting wherein it was decided to restrict Moore's visits, Plaintiff was "repeatedly harassed and threatened by correctional officer Johnson, and Huff, and unknown unnamed officers."  Plaintiff, however, has not named Johnson, Huff, or the "unknown unnamed officers" as defendants in the caption of his complaint as required by Rule 10(a) of the Federal Rules of Civil Procedure.  Furthermore, the harassment does not appear to have been triggered by Plaintiff's exercise of a constitutional right (e.g. filing a grievance or writing a letter).  Accordingly, the Court does not read the instant complaint as asserting a retaliation claim.


## DISPOSITION

        In summary, Plaintiff's complaint does not survive review under § 1915A.  Accordingly, this

action is **DISMISSED** with prejudice.  Plaintiff is advised that the dismissal of this action will count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  All pending motions are **DENIED** as moot.

**IT IS SO ORDERED.**

**DATED this 15th day of April, 2010.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**